**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
***Northern Division***

| | | |
|---|---|---|
| CHEKEIM WYMES *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No.: WDQ-10-1629 |
| JAY LUSTBADER, M.D. *et al.*, | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

**MEMORANDUM AND ORDER**

This Memorandum and Order memorializes, and elaborates on, the rulings made on the record in the discovery hearing held before me on April 27, 2012. The hearing was held to reconsider Defendants Jay M. Lustbader, M.D. and LCA-Vision, Inc.'s Motion for Stay of Discovery, ECF No. 40; Plaintiffs Chekeim and Erika Wymes's Opposition to Defendants' Motion, ECF No. 43; and Defendants' Reply, ECF No. 45, following a nearly four-month suspension of discovery.[1] *See* Jan. 31, 2012 Ltr. Order, ECF No. 48. For the reasons stated below and on the record in the hearing, which is incorporated herein by reference, discovery is SUSPENDED for an additional ninety (90) days from the date of the hearing.

[1] Judge Quarles referred this case to me for all discovery and related scheduling matter on December 20, 2011, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. ECF No. 46.

## I. BACKGROUND

Substantively, Plaintiffs allege that, as a result of Defendants' medical negligence, Mr. Wymes now suffers from post-LASIK ectasia,[2] a condition that has resulted in Mr. Wymes suffering from "decreased visual acuity and quality of vision." Defs.' Mem. Supp. Mot. for Stay 1, ECF No. 40-1; Pls.' Mem. in Opp'n to Defs.' Mot. 1–2, ECF No. 44; Compl. 4–8, ECF No. 1. In November 2011, in an attempt to improve his visual function, Mr. Wymes underwent collagen cross-linking treatment[3] in his right eye.[4] Pls.' Mem. 2; Def.'s Mem. 2. According to Defendants, this treatment "has the potential to halt and/or reverse the progression of [Mr. Wymes's] ectasia." Def.'s Mem. 2. Because "any substantive change or improvement in the quality of Mr. Wymes' vision [generated by the collagen cross-linking treatment] necessarily impacts his potential claims of damages,"[5] Defendants sought a stay of discovery in November

---

[2] Laser-assisted *in situ* keratomileusis, commonly referred to as LASIK, "is a surgical procedure intended to improve the focusing power of the cornea through the precise and controlled removal of corneal tissue." Defs.' Mem. Supp. Mot. for Stay 1 n.1, ECF No. 40-1. "The procedure is intended to improve the patient's quality of vision." *Id.* Post-LASIK ectasia is "an asymmetric inferior corneal steepening (bulging) which can occur after LASIK surgery." *Id.* at 1 n.2; *see also* Pls.' Mem. in Opp'n to Defs.' Mot. 2 ("Ectasia is a disease of the cornea, involving a weakening of collagen fibers, which leads to a progressive thinning of the cornea."). "The abnormal corneal curvature can result in visual distortion and loss of visual acuity." Defs.' Mem. 1 n.1; *accord* Pls.' Mem. 2 ("As the cornea thins [due to ectasia], it has an adverse impact on overall visual function and can impair both the patient's visual acuity and visual quality.").

[3] Collagen cross-linking is "a technique which attempts to strengthen the chemical bonds in the cornea in patients who suffer from ectasia." Defs.' Mem. 2. The treatment is aimed at "halt[ing] or revers[ing] progressive and/or irregular changes in the corneal shape." *Id.* at 2–3. The treatment is experimental; some versions are not approved in the United States. Pls.' Mem. 2.

[4] Mr. Wymes underwent collagen cross-linking treatment in his left eye in the summer of 2011. *See* Defs.' Mem. 3–4. Because the right eye was treated more recently, the parties focus most of their attention on the treatment of Mr. Wymes' right eye. Accordingly, I do the same.

[5] Through the use of expert testimony, Plaintiffs intend to argue at trial that, "as a result of the alleged loss of visual acuity caused by the LASIK surgery, Mr. Wymes has sustained a loss of earning capacity (in present value) in the range of $1,338,211 to $2,172,200." Defs.' Mem. 2. According to Defendants, "Mr. Wymes' claims of damages (both the alleged economic loss [and] the potential costs associated with future medical care and/or treatment) are founded solely and completely on the alleged 'visual disability'" Mr. Wymes sustained from the surgery. *Id.*

2011 "until such time as Mr. Wymes has undergone [the] additional treatment and a definitive and objective evaluation of his condition and prognosis can be made" by their experts. *Id.* at 2.

Plaintiffs objected to Defendants' motion for a variety of reasons, stressing, in particular, that Mr. Wymes' treating physician, Dr. J. Bradley Randleman, has "opine[d] that Mr. Wymes' ectasia has progressed beyond the point where [collagen cross-linking] therapy is likely to help his condition. *See* Pls.' Mem. 3 (citation omitted). Plaintiffs also argued that because "Defendants' experts expressed no difficulty offering opinion on Mr. Wymes's prognosis in their September 30, 2011 expert reports, there is no reason to delay [expert discovery] now." *Id.* Finally, Plaintiffs suggested that Defendants' motion was "a mere delay tactic." *Id.*

Following a telephone discovery hearing held on January 27, 2012, I granted in part and denied in part Defendants' motion and suspended discovery until April 20, 2012, at which time an in-court hearing would be held to receive testimony regarding the status of Mr. Wymes' vision. *See* Jan. 31, 2012 Ltr. Order 1. After rescheduling, *see* Mar. 16, 2012 Ltr., ECF No. 49, the hearing was held on April 27, 2012. At the hearing, counsel presented evidence in the form of expert testimony and documentation regarding the success of Mr. Wymes' collagen cross-linking treatment. The bulk of this evidence was presented by two experts in the field of post-LASIK ectasia—Defendants' expert, Dr. Yaron Rabinowitz, and Plaintiffs' expert, Dr. J. Bradley Randleman. Their testimony addressed whether Mr. Wymes' ongoing recovery merits an additional suspension of discovery; specifically, Drs. Rabinowitz and Randleman testified regarding a central question: Following the cross-linking treatment, how much recovery time is necessary for an expert to offer a sound opinion as to the benefit, if any, of the treatment, relative to other treatment options, including, specifically, the use of contact lenses?

## II. HEARING ON CONTINUED STAY OF DISCOVERY

### A. The Experts' Testimony; The Parties' Arguments

In the hearing, Defendants' expert Dr. Rabinowitz explained that, based on his experience with similar cases, a period of at least one year between the collagen cross-linking treatment and evaluation of Plaintiff's right eye is the minimum amount of time that must pass to accurately determine the benefit, if any, of the cross-linking treatment.[6] Based on literature in the field, his experience with other patients suffering from post-LASIK ectasia, and the improvement Dr. Rabinowitz believes that Mr. Wymes's right eye already has demonstrated, Dr. Rabinowitz concluded that it was likely that Mr. Wymes's visual acuity and quality of vision were likely to change in that one year period. Thus, one year after treatment, Dr. Rabinowitz stated, he would be able to offer a reliable opinion regarding the extent of the improvement in Mr. Wymes's right eye, and to relate that improvement to the options available for treatment of post-LASIK ectasia, including gas permeable contact lenses, INTACS, and corneal transplant surgery.[7] *See also* Defs.' Mem. 9 (citations omitted) (listing treatment options). Dr. Rabinowitz made clear that he would feel substantially less comfortable offering such an opinion earlier than one year from the date the treatment was performed on Mr. Wymes's right eye.

In light of Dr. Rabinowitz's testimony, defense counsel reiterated that it would prefer—for cost and convenience reasons—that its expert examine Mr. Wymes only once, and at a sufficient distance in time from the cross-linking treatment. Defense counsel also stated its

---

[6] Dr. Rabinowitz also noted that literature in the field suggests that the eye could continue to show improvement from the collagen cross-linking treatment up to six years after treatment. As I noted during the hearing, a six-year stay of discovery is far beyond what any court could be expected to entertain, and, to their credit, Defendants do not seek such an extensive stay.

[7] According to the testimony of both experts, corneal transplant surgery is the most extreme, and risky, treatment option. If other options—such as contact lenses or INTACS—would improve Mr. Wymes's visual acuity and quality of vision, those options appear to be preferable.

preference that, for similar reasons, depositions relating to that examination be performed only once. Defense counsel further argued that the jury is entitled to the best evidence available at trial. Because Dr. Rabinowitz cannot now state his conclusions regarding the success of the cross-linking treatment with the probability and certainty he would be able to one year after the treatment, Defendants argued that an additional stay of discovery is appropriate. Moreover, a significant issue in this case is whether Mr. Wymes will be able to tolerate contact lenses; if he is, the need for corneal transplant surgery, and consequently, his potential damages, may be diminished. Defense counsel would prefer that Dr. Rabinowitz's deposition and other discovery occur sometime after Mr. Wymes's tolerance for contact lenses has been evaluated. (As of the date of the hearing, Mr. Wymes had not yet attempted to be fitted for contact lenses.)

In the hearing, Plaintiffs' expert Dr. Randleman drew a distinction between empirical improvement in visual acuity and actual improvement in the way the eye functions. To truly determine the success of Mr. Wymes's collagen cross-linking treatment, in terms of lasting quality of vision, Dr. Randleman stated, it would be necessary to track Mr. Wymes's vision over a period of five to ten years. However, according to Dr. Randleman, a determination of whether Mr. Wymes will be able to tolerate contact lenses could be obtained, at least initially, in a matter of weeks, and there would be no benefit to waiting an additional several months before conducting a contact lenses "test run." Dr. Randleman further explained that, if contact lenses prove unsuccessful, INTACS are not likely to be a viable treatment option, either. Accordingly, if a determination is made in the next few weeks that Mr. Wymes is unable to tolerate contact lenses, and thus, unlikely to benefit from INTACS, it is likely that corneal transplant surgery will be Mr. Wymes's next option. Because these determinations can be made within a several week period, and because they directly relate to the issues on which the experts are to opine, Dr.

Randleman concluded that there would be no benefit to waiting until one year has passed from the date of Mr. Wymes's collagen-cross linking treatment. Rather, Dr. Randleman stated that he would be able to offer an opinion on the extent of improvement in Mr. Wymes's right eye, relative to available treatment options, after Mr. Wymes attempts to be fitted for contact lenses.

In light of Dr. Randleman's testimony, Plaintiffs' counsel stated that, while there may be some benefit to staying discovery, it is not significant. Rather, counsel argued, the experts know now, or will know shortly, most of what they are going to know relative to any possible improvement in the quality of Mr. Wymes's vision. In Plaintiffs' view, the stay of discovery will only delay their opportunity to litigate this matter on the merits, thus delaying their justice.

**B. Federal Rule of Civil Procedure 26(c)**

I note, preliminarily, that in the briefing of Defendants' motion, neither party appears to have addressed the correct standard. The authorities and standards cited by Defendants relate to motions to stay entire proceedings, rather than motions to stay discovery. *See, e.g.*, Defs.' Mem. 11 (citing *Bos. Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783 (D. Del. 2011); *Dentsply Intern., Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656 (D. Del. 1990)). In their response, Plaintiffs misconstrue Defendants' request for a stay of discovery as a request to modify the scheduling order pursuant to Fed. R. Civ. P. 16(b)(4). *See* Pl.'s Mem. 4 ("When Defendants seek a finite six-month stay of the deadlines set forth in the Scheduling Order . . . their Motion is actually a request to modify the Scheduling Order."). As I explain below, motions to stay discovery are more properly considered pursuant to Fed. R. Civ. P. 26(c) and case law interpreting that rule.

In pertinent part, Federal Rule of Civil Procedure 26(c) provides that a "Court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; [or] (B)

specifying terms, including time and place, for the disclosure or discovery."[8] Fed. R. Civ. P. 26(c)(1)(A)–(B). Where good cause is shown by the moving party, Rule 26(c) "vests the court with discretion to stay discovery. . . ." *Bragg v. United States*, No. 2:10-0683, 2010 WL 3835080, at *1 (S.D.W. Va. Sept. 29, 2010); *United States v. Any & All Assets of Shane Co.*, 147 F.R.D. 99, 101 (M.D.N.C. 1993) ("The motion to stay, in reality, seeks a protective order pursuant to Fed. R. Civ. P. 26(c) and thus the petitioner must show good cause."); 10A John Kimpflen et al., *Fed. Proc., L. Ed.* § 26:334 (2012) ("Because a motion to stay discovery is tantamount to a request for a protective order prohibiting or limiting discovery pursuant to Fed. R. Civ. P. 26(c)(2), a motion to stay discovery may be granted pursuant to Fed. R. Civ. P. 26(c)(2), but the moving party bears the burden of showing good cause and reasonableness.").

The moving party "may not rely upon 'stereotyped and conclusory statements,'" to establish good cause; rather, the moving party "must present a 'particular and specific demonstration of fact' as to why a protective order [staying discovery] should issue." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting 8A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 2035 (2d ed. 1994)). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.'" *Id.* (quoting

[8] Rule 26(c) operates in tandem with Rule 26(b)(2)(C), which provides that, acting *sua sponte* or at a party's request, "the court must limit the frequency or extent of discovery" if: (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii); *see Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010) ("Fed. R. Civ. P. 26(b)(2)(C) cautions that all permissible discovery must be measured against the yardstick of proportionality."); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 260 n.10 (D. Md. 2008) ("[I]t is worth repeating that the cost-benefit balancing factors of Fed. R. Civ. P. 26(b)(2)(C) apply to all aspects of discovery.").

*Merit Indus., Inc. v. Feuer*, 201 F.R.D. 382, 384–85 (E.D. Pa. 2001)). In the context of a request to stay discovery, "[t]he moving party must come forward with a specific factual showing that the interest of justice and considerations of prejudice and undue burden to the parties require a protective order and that the benefits of a stay outweigh the cost of delay.'" Kimpflen et al., *supra*, § 26:334 (quoting *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 638 (M.D.N.C. 1988)).

Rule 26(c)'s good cause requirement "creates a rather high hurdle" for the moving party. *Natanzon*, 240 F.R.D. at 202; *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987) (noting the "heavy burden of demonstrating the good cause" for a Rule 26(c) order). However, the Rule also "'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)); *see also Scarberry v. Huffman*, No. 3:10-0831, 2010 WL 4068923, at *2 n.1 (S.D.W. Va. Oct. 15, 2010) (explaining that "the issues raised by a motion to stay discovery implicate matters of federal procedural law that fall within the confines of the district court's discretion").

On motion, it is not uncommon for courts to stay discovery pending resolution of dispositive motions.[9] *See, e.g.*, *Thigpen v. United States*, 800 F.2d 393, 396–97 (4th Cir. 1986) (endorsing the trial court's decision to stay discovery pending disposition of a Rule 12(b)(1) motion), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988); *Naef v. Wells Fargo Home Mortg.*, No 7:10-CV-163-FL, 2010 WL 5055990, at *2 (E.D.N.C. Dec. 3, 2010); *Bragg*, 2010 WL 3835080, at *1; *see also Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C. Del. 1979) (noting that such stays are "an eminently logical means to

---

[9] But, such stays typically are not granted "if discovery is needed in defense of the [dispositive] motion" at issue, or if 'resolution of the motion will not dispose of the entire case.'" *Natanzon*, 240 F.R.D. at 203 (quoting *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988)) (citing *Tilley v. United States*, 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003)).

prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources," and listing factors to be considered in determining "whether a stay of all discovery pending the outcome of a dispositive motion is warranted"). Motions to stay depositions, however, are often denied. *See Natanzon*, 240 F.R.D. at 202 (citing *Medlin*, 113 F.R.D. at 652); *cf.* 10 Kimpflen et al., *supra*, § 26:191 ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit *altogether* the taking of a deposition.") (emphasis added).

Several courts have cautioned against staying discovery, noting that motions to stay discovery are "not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Simpson*, 121 F.R.D. at 263; *Kron Med. Corp.*, 119 F.R.D. at 637–38 ("In considering [motions to stay discovery], the Court needs to remain mindful of its responsibility to expedite discovery and minimize delay. Disruption or prolongation of the discovery schedule is normally in no one's interest. A stay of discovery duplicates costs because counsel must reacquaint themselves with the case once the stay is lifted. Matters of importance may be mislaid or avenues unexplored. A case becomes more of a management problem to the Court when it leaves the normal track. While time may heal some disputes, in others it merely permits more opportunity for festering."); *see also Medlin*, 113 F.R.D. at 652 (stating that protective orders "should be sparingly used and cautiously granted").

**C. Analysis**

I note, preliminarily, the excellent quality of the expert assistance from which the Court benefited in the hearing. The Court was presented with two highly qualified experts, each of whom offered, via video or audio connection, their opinions on their ability to offer a reliable

opinion at trial regarding the likelihood that Plaintiff's vision will improve. The issue here boils down to a key difference—the amount of time each expert feels should have passed between Mr. Wymes's cross-linking treatment and their examination in order to offer a reliable opinion.

Evidence was presented at the hearing that supports each party's position, and I am not without sympathy to Plaintiffs' desire to litigate this dispute on the merits and move on with their lives. However, Dr. Rabinowitz indicated that, although he could offer an opinion on the benefit of the cross-linking treatment on Mr. Wymes's vision at this time, it would not be the best or most reliable opinion he could offer; indeed, it may be speculative. As such, his testimony would likely be the subject of a motion *in limine* made pursuant to Fed. R. Evid. 401, 403, 702 & 703. *Samuel v. Ford Motor Co.*, 112 F. Supp. 2d 460, 470 (D. Md. 2000) ("If the . . . expert testimony is speculation, or conjecture, it is not relevant. This is because it has no tendency to make a significant fact more or less probable than otherwise, as guesswork is the very antithesis of probability. Even if arguably relevant, conjectural opinion testimony should be excluded under Rule 403 because whatever minimal probative value it may be said to possess clearly is substantially outweighed by the danger of confusion. Additionally, . . . an expert opinion based on speculation or guesswork will not meet the helpfulness requirements of Rule 702, nor will it be the product of reliable facts, as required by Rule 703."); *see Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011) ("In its capacity as a 'gatekeeper' of expert evidence, the Court must exclude expert testimony that is based only 'on belief or speculation.'" (quoting *Oglesby v. Gen Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999))).

I am convinced that Defendants' request is not made for an improper purpose, or solely to delay litigation on the merits. Rather, Defendants' request seeks to pause discovery in this case in order to permit its expert an opportunity to offer a reliable, non-speculative opinion on the

success of the collagen cross-linking treatment on Mr. Wymes's right eye relative to current treatment options. Thus, the request relates to the quality of the evidence with which the jury will be presented at trial. Ensuring that its expert is able to render a reliable, non-speculative opinion on an issue central to the case satisfies Fed. R. Civ. P. 26(c)'s good cause requirement. Defendants' request is not "'stereotyped [or] conclusory.'" *Natanzon*, 240 F.R.D. at 202 (quoting 8A Wright et al., *supra*, § 2035). Rather, Defendants made at the evidentiary hearing "a specific factual showing that the interest of justice and considerations of . . . undue burden . . . require[s issuance of] a protective order and that the benefits of a stay outweigh the cost of delay." *See* Kimpflen et al., *supra*, § 26:334 (quoting *Kron Med. Corp.*, 119 F.R.D. at 638). Dr. Rabinowitz's expert testimony bore out the wisdom of allowing additional time for Mr. Wymes's eye to respond to the collagen cross-linking treatment and permitting the experts to render their opinions after sufficient time has passed. Because Defendants have established good cause for the issuance of a protective order, Rule 26(c) grants me the discretion to stay discovery in this case. *See Bragg*, 2010 WL 3835080, at *1; *Any & All Assets of Shane Co.*, 147 F.R.D. at 101.

The length of the stay also is a matter within the Court's discretion. As Dr. Rabinowitz and Dr. Randleman's testimony suggested, expert discovery in this case theoretically could be put off for a number of years. *See supra*. Indeed, both experts noted that Mr. Wymes's eye could continue to show improvement five to ten years from now. A stay of discovery of that duration would be as prejudicial to Plaintiffs as it is unrealistic. *See Kron Med. Corp.*, 119 F.R.D. at 638. However, as explained above, Dr. Rabinowitz's testimony displayed the wisdom of extending discovery for some period of time so as to permit further improvement, if any, in Mr. Wymes's vision. Mindful of the potential costs of a lengthy stay, I hereby SUSPEND discovery for an additional ninety (90) days of the date of the evidentiary hearing. I have

selected this duration for the stay because the experts' testimony suggested that whether Mr. Wymes is able to tolerate contact lenses in his right eye is a significant question in this case—and it is a question that can be answered within a relatively short period of time.[10] Once this question is answered, the experts will be able to opine on the success of the collagen cross-linking treatment relative to Mr. Wymes's ongoing treatment options. Specifically, if Mr. Wymes responds well to contact lenses, it will indicate that the cross-linking treatment has achieved some degree of success, as difficulty in tolerating contact lenses is often related to irregular corneal shape, and collagen cross-linking treatment is aimed at halting or reversing "progressive and/or irregular changes in . . . corneal shape" caused by post-LASIK ectasia. Defs.' Mem. 2–3. I note, additionally, that this ninety day suspension brings the total amount of time since the collagen cross-linking treatment on Mr. Wymes's right eye to nearly nine months, or three-quarters of the time that Dr. Rabinowitz requested.

This decision is in line with the important values articulated in Rule 1. *See* Fed. R. Civ. P. 1 ("[The rules] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."). A trial date has yet to be set in this case. Additionally, were I to deny the request for a stay entirely, it is possible that, at a later time, and subject to possible developments in Mr. Wymes's condition, discovery would need to be reopened. In light of these considerations, I do not believe that the stay of discovery imposed herein will create the type of case management problems that have troubled other courts. *See Simpson*, 121 F.R.D. at 263. Indeed, I am of the view that staying discovery for ninety days will spare the parties of "unnecessary litigation expenses," *id.*, by, for example, eliminating the need

[10] This Order in no way compels Mr. Wymes to be fitted for, try on, or wear contact lenses. The ninety (90) day discovery stay imposed herein is based on the experts' testimony that evidence relating to Mr. Wymes's tolerance for contact lenses could be determined—if Mr. Wymes chooses to be fitted for and wear contact lenses—within that period of time.

to redo some expert discovery. Similarly, I do not feel that this stay will "duplicate[] costs," as ninety days is not such a lengthy period of time that counsel will need to "reacquaint themselves with the case once the stay is lifted." *See Kron Med. Corp.*, 119 F.R.D. at 638.

## III. CONCLUSION

For the reasons stated above and on the record in the hearing, which is incorporated herein by reference, discovery is hereby SUSPENDED for an additional ninety (90) days of the date of the hearing. Prior to the expiration of that ninety (90) day period, the parties should confer and prepare a joint proposed modified scheduling order to submit to Judge Quarles. The proposal should include final deadlines for deposing Defendant's experts (who have been identified, but not yet deposed), Plaintiff's rebuttal Rule 26(a)(2) expert disclosures, and the parties' Rule 26(e)(2) supplementation of disclosures and responses, a new discovery deadline, and a date by which dispositive pretrial motions will be submitted to the Court.

Dated: May 16, 2012

_______ /S/________
Paul W. Grimm
United States Magistrate Judge

hlw